LAW OFFICES OF ERIK BABCOCK
ERIK BABCOCK (Cal. 172517)
717 Washington St., 2d Floor
Oakland CA 94607
Tel: (510) 452-8400
Fax: (510) 452-8405
erik@babcocklawoffice.com

Attorney for Defendant
SEAN CHIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SEAN CHIN,<br><br>    Defendant. | Case No. CR 4:16-CR-00382 HSG (KAW)<br><br>**DEFENDANT SEAN CHIN'S SENTENCING MEMORANDUM**<br><br>Date: August 28, 2019<br>Time: 2:00 p.m.<br>Hon. Haywood Gilliam, Courtroom 2 |

Mr. Sean Chin requests a sentence of time served with community service, as recommended by the Probation Officer in this case. Mr. Chin is not the same person that committed the crime in this case years ago. He has taken the challenge of being indicted in federal court and turned it into an opportunity to grow and become a much better person. In the words of the Supreme Court, the punishment must "fit the offender and not merely the crime." *Pepper v. United States,* 131 S.Ct. 1229, 1240 (2011).

In the last two and half years, Mr. Chin has gotten himself off of drugs, and stepped up to the challenge of being a single father and raising a young daughter after her mother left.

He has and continues to acknowledge and accept responsibility for his crime. The day

1

he was arrested in this case he waived Miranda and admitted to his crimes and involvement in this case to the case agent.

Since being released, he has fully embraced the opportunities provided by Pretrial Services. He participated for over a year in, and ultimately completed, the Courage to Change program offered through Pretrial Services.

The Guideline range is 21 to 27 months. But the Sentencing Guidelines are to be given <u>no more weight</u> than any other statutory sentencing factor under 18 U.S.C. § 3553. *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008)(citing *Kimbrough v. United States*, 522 U.S. 85 (2007)). While the Guidelines are to be respectfully considered, they are just one factor among many set forth in § 3553 as factors that are to be taken into account in arriving at an appropriate sentence. *Id.*

The Guidelines in this case do not fit the offender. Other factors should carry more weight for this offender. Mr. Chin respectfully requests a chance to prove to this Court that he is worthy of a chance to prove himself to be a continued law abiding and productive person.

**1. Applicable Sentencing Factors Justify the Requested Sentence**

Under Section 3553, the Court "shall impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes [of the] . . . need for the sentence imposed:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with the needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2)(A)-(D). In determining the minimally sufficient sentence, courts consider these purposes, as well as "the nature and circumstances of the offense and the history and characteristics of the defendant," (§ 3553(a)(1)), "the kinds of sentences available" (§ 3553(a)(3)), "the need to avoid unwanted sentence disparities" (§ 3553(a)(6)), and "the need to provide restitution" (§ 3553(a)(7)). The court must also consider the applicable guideline ranges, but those guidelines are advisory under *United States v. Booker*, 543 U.S. 245, 756 (2005). 18 U.S.C. § 3553(a)(4). And the sentencing guidelines are not only merely advisory, but also are to be given no more weight than any other factor under Section 3553. *Kimbrough v. United States*, 522 U.S. 85 (2007). In short, the sentencing court retains significant discretion to "tailor the sentence in light of other statutory concerns as well." *Id*.

### 2. Mr. Chin's Personal History and Characteristics Support the Recommended Sentence

Mr. Chin's mother left him, his father and his twin brother while he was very young. He was raised in the Miami, Florida area by his father and grandmother.

Mr. Chin has always struggled with education. He had learning difficulties, resulting in him having to repeat a grade and having an IEP. He did not graduate high school and still struggles with reading, comprehension, and math. He has tried and failed to pass the tests to obtain his GED, although he has not given up trying and plans and hopes to be able to pass it at some point.

Mr. Chin met his child's mother while still living in Florida. She became pregnant with their child. She was from the East Bay, and Mr. Chin followed her back to California because of the pregnancy.

3

She was friends with some of Oscar Escalante's family and associates. They eventually approached Mr. Chin and asked if he would consider leasing a residence that they could use as a marijuana grow house. Mr. Chin was not employed, had a newborn daughter, and needed money, so he agreed. Escalante provided bogus paystubs that allowed Mr. Chin's girlfriend to qualify for a lease at 406 H Street in Antioch. At one point Mr. Chin changed his mind and inquired about getting out of the lease, but the real estate agent said it had already been signed and they were on the hook for the full one-year lease term.

Oscar Escalante provided Mr. Chin with marijuana to sell for him. Mr. Chin was usually remunerated at $100 for a pound of marijuana that he sold for Mr. Escalante.

At all relevant times during the 15 months or so before he was charged, Mr. Chin was using and abusing both marijuana and cough syrup.

After he was arrested in this case, Mr. Chin stopped using drugs. He has tested clean now for over 3 years.

On New Years, January 1, 2017, some four months after being arrested and released in this case, Mr. Chin was arrested on a domestic violence charge. His girlfriend and he had both been drinking very heavily, got into an argument, and he struck her. Mr. Chin acknowledges his conduct was wrong, and it has not happened before or since. Mr. Chin was never prosecuted in state court. Nevertheless, the magistrate placed him in a halfway house for about 60 days.

After that, Mr. Chin stopped drinking. His girlfriend and baby's mother did not, however, and left Mr. Chin with their daughter. She moved out of state and lives in Georgia. She has visited, but not moved back, since.

Mr. Chin was thus suddenly faced with the prospect of single-handedly raising a small

girl. His daughter, Manami, is now four years old now, but she was just a toddler when her mother left nearly two and half years ago.

Mr. Chin has stepped up to the challenge of being a single father and then some.

As Brianna Cecchi states in her letter:

> [Mr. Chin has] been a great father to his daughter that I have seen personally. He does anything and everything to give her the world. Every day I am around, I see him teach her the difference between right and wrong. Manami is unbelievably smart for her age, strong, special, gifted, caring, loving. All traits I believe she gets from Sean. I see their bond and how much she loves her dad, even being away from him for a couple days would be detrimental to her stability.

The letters from his family and friends describe a good and decent young man who has stepped up to overcome the challenges he has faced. See Exhibit A.

Moreover, the Probation Officer personally met with Mr. Chin and evaluated his character before ultimately deciding to recommend a sentence of no further incarceration.[1]

### 3. A Sentence of Credit For Time Served With 5 Years Supervised Release Would Avoid Unwarranted Sentencing Disparities In This Case

A sentence of time served would also avoid unwarranted disparities in this case. This Court has now sentenced the vast majority of the 22 defendants charged in this case. Only two defendants were not sentenced to further custodial time, Melina Escalante and Claudia Munoz.

Both Mrs. Escalante and Ms. Munoz were, like Mr. Chin, not central players in Oscar Escalante's conspiracy. Ms. Munoz was clearly more culpable than Mr. Chin, as the prosecution acknowledges.

Both, like Mr. Chin, had minimal if any prior criminal records.

---

[1] The Probation Department's Sentencing Recommendation notes that Mr. Chin is statutorily ineligible for probation but then recommends five years probation. Defendant assumes the officer meant to recommend a sentence of credit for time served with five years supervised release, which is functionally the same sentence but is statutorily authorized.

And both, like Mr. Chin, had small children who depended on them.

Because of this combination of facts--relative culpability, minimal criminal records, and significant responsibility in caring for and raising children—this Court decided Mrs. Escalante and Ms. Munoz did not deserve further incarceration.

Mr. Chin is in the exact same position. The court should consider a similar sentence, in part, to avoid unwarranted disparity.

Counsel is not privy to the other defendants' presentence reports, but believes that although Probation recommended no jail for Mrs. Escalante, it did recommend 18 months imprisonment for Ms. Munoz. The Court nevertheless declined to sentence her to further incarceration.

The prosecution in this case tries to analogize Mr. Chin to Mr. Hinkle and Mr. Jiunti. Mr. Jiunti had a significant prior record—Mr. Chin is a Criminal History Category I, so the analogy is not appropriate. And Mr. Hinkle did not single-handedly raise a small child for two and half years and have continuing child rearing obligations. The comparison of Mr. Chin with Mr. Hinkle should carry less force with the court than the comparison of Mr. Chin with Mrs. Escalante and Ms. Munoz.

**CONCLUSION**

Mr. Chin respectfully requests that he be sentenced in accordance with the sentencing recommendation of the Probation Office. Given this particular offense, and this particular defendant, the recommended sentence is sufficient but not but not greater than necessary (A) to reflect the seriousness of the offence, to promote respect for the law, and to provide just

6

punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S. Code § 3553(a)(2)(A-D)

DATED: August 23, 2019                           Respectfully submitted,

                                                     By:   *Erik Babcock*

                                                        Attorney for Defendant
                                                        SEAN CHIN