IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA



FILED
JUL 10 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES OF AMERICA

    Plaintiff(s)

V.

Criminal Case No. 416CR00382 -11 HSG

JORGE GOMEZ
BOP Inmate No. 23660-111

    Defendant

## MOTION REQUESTING A JUDICIAL RECOMMENDATION CONCERNING LENGTH OF RRC/HALFWAY HOUSE PLACEMENT

COMES NOW, the Defendant, Jorge Gomez, pro se and unskilled in the field of law, and respectfully moves this Honorable Court to recommend that the Bureau of Prisons ("BOP") afford the Defendant Residential Re-entry Center ("RRC")/halfway house placement time of 12 months preceding the end of his sentence. In support thereof, Defendant states as follows:

1. On June 18, 2018 Defendant was sentenced by this Court to a term of sixty (60) months imprisonment followed by a term of four (4) years of supervised release.

2. Pursuant to the Second Chance Act of 2007 ("SCA") the BOP may place a defendant into RRC/halfway house up to twelve months prior to his release date if it is determined that Mr. Gomez's placement in a halfway house is of *"sufficient duration to provide the greatest likelihood of successful reintegration into the community."*

3. The criteria that the Bureau of Prisons is to consider in assessing an individual applicants' eligibility for up to twelve months of RRC/Halfway House includes: any statement made by the Court concerning the purposes that warranted a sentence to imprisonment and

recommending the type of correctional facility that would be appropriate. 18 U.S.C. 3621(b)(4)(A), (B). (See **Exhibit A-Granted RRC motions-12 month**). An RRC/halfway house is a correctional facility with superior transitional programs to help inmates rebuild their ties to the community.

4. Title 18, United States Code, section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except" in very limited circumstances, and Mr. Gomez is not asking the court to modify the sentence. He is asking the Court to simply change the place of incarceration of the sentence per the Second Chance Act, a federal law.

5. Mr. Gomez is currently housed at the US Penitentiary in Atwater, California. His release date is October 25, 2021, and a recommendation for RRC placement will not affect this.

6. Mr. Gomez is 41 years old. He is still young enough to be reformed and rejoin law-abiding society with all the help of a judicial recommendation for prolonged placement at a federal halfway house.

7. Mr. Gomez's employment history has been menial without promotional opportunities in the business of soil stabilization. He has not achieved any professional license or in-demand market skills. Promotional employment prospects are not promising without the retraining assistance at a federal RRC.

8. In addition, Mr. Gomez has participated in the following BOP programs in an attempt to prepare for his release and aid in his rehabilitation:

   a. Personal Fitness Trainer
   b. Microsoft Office
   c. Microsoft Word
   d. Real Estate Fundamentals
   e. Personal Finance
   f. Organic Farm Cooperative

g. Business Law
        h. Job Fair
        i. Typing
        j. Medicine Ball-Beginning & Intermediate

9. A recommendation that Mr. Gomez be placed for 12 months at an RRC/Halfway House would be non-binding on the BOP but consistent with the reintegration principles of the Second Chance Act and would allow Mr. Gomez to better address the underlying impetus that led to commission of his instant offense.

10. A recommendation that Mr. Gomez be afforded RRC/Halfway House placement time of 12 months would maintain the integrity of the disposition while still preserving the punitive aspect of his sentence since it would not modify the court's sentence and would allow Mr. Gomez the opportunity to address and correct his elevated risk of recidivism by virtue of his arrest record, the nature of his offense, his lack of promotional employment possibilities, lack of savings, drug abuse, likelihood of losing home, lack of assets, and a 60 month sentence. He will remain under the control of the BOP while in the supervised environment of the RRC as the law requires.

11. Mr. Gomez expressed exceptional remorse and contrition regarding his commission of his offenses and he cooperated fully with the Prosecution.

12. The Inspector General of the BOP and the Attorney General of the U.S. has noted in reports and public statements that the BOP is under-utilizing various programs available, such as RRC/halfway house, and even such deserving inmates as Mr. Gomez are frequently denied extended placement. It should also be noted that generous RRC/halfway house placement reduces the cost of traditional incarceration. If it pleases the court, for all the foregoing reasons, we request the court agree to recommend 12 months of halfway house preceding release for Jorge Gomez.

WHEREFORE NOW, above premises considered, the defendant respectfully requests that this Honorable Court GRANT [his] motion and all relief requested herein, issuing a judicial recommendation to the BOP that Defendant be granted placement time of 12 months of halfway house, reflecting the same and granting all other relief required by Law, Liberty, and Equity.

Done this 8th Day of July 2020

Respectfully Submitted,

X *[signature]*

Jorge Gomez, Register #23660-111
USP Atwater
PO Box 019001
Atwater, CA 95301

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, First-Class Postage prepaid. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained, and has no other means.

Done this 8th Day of July 2020

Respectfully Submitted,

X _____

Jorge Gomez, Register #23660-111
USP Atwater
PO Box 019001
Atwater, CA 95301

# EXHIBIT 1A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 13-39 Erie |
| | ) |
| BRIAN M. QUIMBY | ) |
| | ) |

## MEMORANDUM ORDER

Brian Quimby has filed a *pro se* motion [ECF 69] requesting that the Court recommend to the Bureau of Prisons ("BOP") that he be placed in a Residential Re-Entry Center for a period of twelve (12) months prior to the end of his sentence.

It has always been the policy of this Court not to attempt to order the BOP to do anything, although the Court has often made recommendations to the BOP regarding the placement of defendants. Indeed, on Mr. Quimby's Amended Judgment [ECF 61] we stated: "I recommend assignment to a Center as close to this defendant's home in Sarasota, Fl as possible. He is truly a 'white collar' defendant, and I would not expect him to cause any problems wherever he is assigned. He is well educated, computer experienced and may be helpful to any administration."

Assuming there is no objection from the Government, therefore, I will grant Mr. Quimby's Motion and recommend that he be placed in a Residential Re-Entry Center for a period of twelve (12) months prior to the end of his sentence.

July 13, 2016

Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Brian Quimby
#34515-068
FCI Miami
PO Box 779800
Miami, FL 33177

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

    Plaintiff,                                         Case No.: 1:07CR00647

v.                                                **ORDER**

Zubair Ahmed (B.O.P. Inmate 19303-424),

    Defendant,

Defendant pleaded guilty to and was convicted of conspiring to provide material support to terrorists in violation of 18 U.S.C. § 2339A. His base offense level was 43 (deemed 52 for sentencing purposes). Defendant had never been arrested before this offense, but received a criminal history category of IV due to the nature of the crime. This resulted in a Guideline Range of 360 months to life imprisonment.

I sentenced defendant on June 10, 2010, to a term of 120 months, with three years supervised release to follow. The defendant's "out date" is August 17, 2018.

He has filed a *pro se* "Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement." (Doc. 207). The government opposes the motion. (Doc. 208).[1]

For the reasons that follow, I grant the motion and recommend that the Bureau of Prisons *forthwith* arrange for the defendant's release to a halfway house in his hometown, Chicago.

---

[1] The defendant filed his motion on July 10, 2017; the government its response on July 18, 2017. Lest there be any doubt, the delay in deciding the motion was entirely inadvertent, due to my own oversight as to its pendency. The delay was by no means whatsoever intentional. Thus, no reader should infer that my tardiness in preparing and filing this order indicates any hesitancy on my part to grant the defendant's request. I regret my delay in addressing the defendant's motion; the consequences of that delay are, unfortunately, incurable.

**Discussion**

Title 18 U.S.C. § 3624(c)(1) authorizes the Bureau's Director to assign an inmate during the last months of his term (not to exceed twelve months) to a halfway house:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Halfway house placement is "a mechanism to reduce recidivism." (Doc. 207, Ex. 2 (Bureau of Prisons Director's Memorandum for Chief Executive Officers: "Revised Guidance for Residential Reentry Center (RRC) Placements")). The Second Chance Act instructs that an inmate's placement should be "of sufficient duration to provide the greatest likelihood of successful reintegration in the community." 18 U.S.C. § 3624(c)(6)(C). Although the Director is ultimately responsible for defendant's placement, the Bureau must consider "any statement" I make "recommending a type of penal or correctional facility as appropriate." *See* 18 U.S.C. § 3621(b)(4)(B).

The government's principal contention appears to be that the defendant, in light of the nature of his conviction, deserves no leniency and should not return to his home community until the latest date (usually six months prior to expiration of the term) as of which the Bureau would place him in the halfway house to prepare for release from custody.

I disagree with the government for several reasons.

First: the government says I do not know what the defendant's conduct has been in prison. So saying, the government ignores the courses that defendant has taken on subjects as diverse as Aquiculture and Organic Farming to Computer Applications, Financial Literacy, and Technology 101 to Stress Management and Decision-Making to College Correspondence Courses and Spanish.

2

More to the point, the government offers no evidence as to the defendant's conduct, good or bad, while in custody. But the government certainly could have found out what his record as an inmate was. Its silence in that regard is telling.

Second: with an "out date" one month short of two years before his imposed term ends on July 12, 2020, it is readily apparent that the defendant has substantial good time credit.[2]

That fact, like the government's silence, is telling. Indeed, it suggests that the professed ignorance about the defendant's conduct in prison is not just telling; it appears disingenuous.

Admittedly, the defendant's crime was serious. I took that fact expressly into account at sentencing. I suggest, though, that now is not the time to give, as the government does, too much heed to that factor.

What really matters at this point is assessment of what, if any risk, the defendant poses to the community. Given his apparent rehabilitation, as evidenced by his good time credit and educational pursuits, further imprisonment is simply punitive.

Punishment for punishment's sake is not a § 3553(a) factor.

Nor should or could it be in a penal system in the service of the Rule of Law. Demanding that the defendant remain in prison until the last grain of sand in the hour glass has run down, the government, it seems to me, has no real motivation other than punishment.

To be sure, the government professes concern about community safety. While that is, of course, a core concern, the government offers nothing to substantiate its apprehension.

---

[2] Defendant can earn 42 or 54 days of good time credit per year, depending on the progress he makes toward earning a GED or high school diploma. *See* 28 C.F.R. § 523.20(c). With an "out date" twenty-three months short of the end date of the imposed term, I can infer that defendant may well have earned all the good time credit available to him.

3

The defendant will return to Chicago at some point. Is there any reason to believe that hastening his return by few months (during which he'll still be confined under Bureau control) endangers anyone? The government offers, and I see none.

Instead, I believe that an early start on reentry within the halfway house setting can enhance the likelihood of an uneventful period of supervised release and long-term law-abiding behavior.

When he returns home, defendant will do so tarred with the indelible brush marks of one who wanted to provide substantial assistance to overseas terrorists. That stain will never wash off or be wiped away.

For someone so convicted, reentry will be especially difficult.

That being so, it makes better sense - and better serves the community - to allow the defendant to enter a halfway house now, rather than wait until the usual six months before the end of his term.

Delay, on the other hand, can serve no useful purpose, for the defendant or his community.

### Conclusion

In light of the foregoing, I grant the defendant's motion and recommend that the Bureau of Prisons promptly end his prison confinement and transfer him to a Residential Reentry Center to begin the process of reentry into his home community.

It is, therefore, hereby

ORDERED THAT:

1. The defendant's Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (Doc. 207), be, and the same hereby is granted;

2. The United States Attorney shall on receipt of this Order, immediately forward it to the appropriate Bureau of Prisons officials responsible for deciding when to transfer prison inmates to halfway house custody; and

3. The Clerk shall serve a copy of this Order on the Warden of the Seagoville (Texas) Federal Correctional Institution and the defendant's Case Manager at that institution.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

Jorge Gomez
Reg #23660-111
Federal Prison Camp @ Atwater
1 Federal Way
P.O. Box 019001
Atwater, CA, 95301



CERTIFIED MAIL
7019 1640 0002 1550 0445

Legal Mail

Clerk of the Court
Ronald Dellums Federal Building
And U.S. Courthouse
1301 Clay Street, Suite 400s
Oakland, CA, 94612

⇔23660-111⇔
Clerk Of The Court
Suite 400s
1301 CLAY ST
Oakland, CA 94612
United States